The judgment is affirmed, costs to be paid by the defendant.

7 So.2d 708

ALFORTISH et al. v. WAGNER.

No. 36255.

March 30, 1942.

McLoughlin & West, of New Orleans, for plaintiffs and appellees.

Casey, Babin & Casey, of New Orleans, for defendant and appellant.

McCALEB, Justice.

This is a suit for an injunction in which the plaintiffs, as owners of property situated in the neighborhood of defendant's property on Desire Street, seek to have him restrained from violating certain building restrictions contained in the title to his land, which were allegedly inserted therein for the benefit of plaintiffs and other proprietors similarly situated. The facts of the case are not seriously disputed and we find them to be as follows:

On September 28, 1921, a concern named New Orleans Housing Corporation (the common ancestor in title of plaintiffs and defendant) purchased seventy lots of ground located in twelve squares or blocks in the same general neighborhood in the City of New Orleans. The outer boun-

daries of these twelve squares are Congress, North Johnson, Piety and North Dorgenois Streets. The squares contain 192 lots of land of which, as we have above stated, the New Orleans Housing Corporation acquired seventy. In some of the squares, particularly Nos. 1306, 1307, 1229, 1230, 1152, 1153 and 1079, which are bounded by North Dorgenois, North Miro, North Galvez, Desire and Congress Streets, the lots acquired by the Housing Corporation were scattered and comprised only a portion of the total number of lots contained in those squares. However, in the Squares Nos. 1005, 1006 and 1007 (with which we are presently concerned), which are bounded by Congress, North Galvez, Elmira, Desire, Piety and North Johnson Streets, the Housing Corporation acquired all of the lots fronting on both sides of Desire and Elmira Streets. And in Square No. 1006, where the defendant's property is situated, the Corporation acquired all of the lots.

The New Orleans Housing Corporation was engaged in the business of developing real estate. Upon its acquisition of the seventy aforementioned lots, it built residences on thirty-two of them and formulated a general plan for the disposal of the property thus improved as well as the vacant property by sale under bonds for deed to the public. In keeping with this scheme, it inserted building restrictions in a vast majority of the bonds for deed issued by it which provided, among other things, that any building or other edifice erected on the lots be set back fifteen feet from the front property line. And, in conformity with this general idea of establishing a set-back for dwellings, the company inserted in the acts of conveyance subsequently granted to the purchasers similar clauses restricting the erection of buildings closer than fifteen feet from the front property line.

By stipulation between the litigants in this case, it is admitted that covenants respecting the fifteen foot set-back of buildings from the front property line were inserted in the titles to forty-four and a half (44½) lots, which were sold by the New Orleans Housing Corporation; that, through error or otherwise, these restrictions were left out of the original titles to eleven and five-sixths (11⅚) lots and that, as to the remainder, it is not known whether the building restrictions are contained in the titles.

The specific property owned by the defendant fronts on Desire Street and is Lot No. 7 in Square No. 1006, which is bounded by Desire, North Galvez, Elmira and North Johnson Streets. In the original transfer of this lot by the New Orleans Housing Corporation, the building restriction providing for a fifteen foot set-back is contained in the deed. Several conveyances were thereafter made of the lot until the property was finally acquired by the defendant. The building restriction does not appear in his deed.

The plaintiffs in this suit are seven in number. Six of them, Alfortish, Binder, Hauesser, Maher, Brunig and Croall, own property fronting on Desire Street in Square No. 1007 facing the defendant's property which is on the other side of the street. The other plaintiff, Mason, is the owner of Lot No. 3 in Square No. 1006 fronting on · Desire Street—in the same

block as defendant—his lot being separated from the property of the defendant by Lots Nos. 4, 5 and 6. The titles of Alfortish, Binder, Hauesser, Maher and Mason contain the building restrictions respecting the fifteen foot set-back from the property line. The titles of Croall and Brunig do not contain these building restrictions, but such restrictions were inserted in the bonds for deed which were originally issued by the New Orleans Housing Corporation.

It is further shown by the evidence that the building restrictions were not inserted in the original deeds from the New Orleans Housing Corporation to the purchasers of Lots Nos. 4, 5 and 6 of Square 1006 facing on Desire Street (adjacent to defendant's property). These restrictions were, however, contained in the bonds for deed for those lots originally issued by that company.

Lot No. 8, which abuts defendant's lot on the other side and forms the corner of Desire and North Galvez Street, is being occupied as a gasoline service station. The record is silent as to whether, in the original transfer from the New Orleans Housing Corporation, the building restriction was contained in the deed to that lot, but it appears that the restriction was inserted in the bond for deed issued by the company.

The evidence in the case further exhibits that, notwithstanding the omission of the building restrictions respecting the fifteen foot set-back from the property line in the original deeds from the New Orleans Housing Corporation to the purchasers of Lots Nos. 4, 5 and 6, the present owners of those lots have conformed to the restrictions in the erection of their homes.

And it is also exhibited that all of the owners of property situated on both sides of Desire Street, in Squares Nos. 1006 and 1007 in the block bounded by North Galvez Street and North Johnson Street, have set back their buildings fifteen feet from the property line in accordance with the original plan of the New Orleans Housing Corporation.

On March 11, 1941, the defendant Wagner, who conducts a business establishment upon his property, applied for and obtained a permit from the Department of Public Property of the City of New Orleans to erect certain additions to his building. These additions contemplated the extension of the front of his building from the fifteen foot set-back to the front property line. As soon as the permit was obtained, the defendant began to erect the addition. The plaintiffs thereupon instituted the present suit against him for an injunction on the ground that the building restriction contained in the original title deed under which his property had been acquired from the New Orleans Housing Corporation was a covenant running with the land and was inserted therein for the benefit of plaintiffs and others similarly situated.

Upon the showing made by plaintiffs in their petition, a rule nisi was issued by the trial court for the defendant to show cause why the relief prayed for should not be granted. On the return day of the rule, the defendant appeared and, in answer to plaintiffs' petition, alleged that the building restriction contained in his title should not be enforced for the following reasons: (1) That the general plan for building re-

strictions adopted by the New Orleans Housing Corporation was incapable of fulfillment since the seventy lots originally owned by the corporation were not adjacent but were disconnected and scattered over the twelve squares of ground containing a total of 192 lots; (2) that two of the plaintiffs, Croall and Brunig, were without cause of action because the original titles under which their lots were acquired did not contain covenants providing for building restrictions; (3) that the titles to Lots Nos. 4, 5, 6 and 8 in Square No. 1006 immediately adjoining defendant's place of business did not contain the building restrictions; (4) that, subsequent to the original sales by the New Orleans Housing Corporation of the lots on Desire Street, the character of the neighborhood in that vicinity had been changed from residential to commercial by the zoning ordinance of the City of New Orleans; and (5) that, inasmuch as the building restrictions had not been inserted in all of the titles to the lots sold by the New Orleans Housing Corporation, the original plan had been abandoned.

After hearing evidence on the issues set forth in the pleadings, the trial court, being of the opinion that the plaintiffs were entitled to relief, issued the injunction as prayed for. The defendant has appealed from the adverse decision.

Before considering the various contentions raised by the defendant, it is apt to observe that the jurisprudence of this State is well settled that stipulations in title deeds providing for building restrictions (such as the one contained in the defendant's title) are valid and enforcible where the restrictions have been inserted in pursuance of a general plan devised by the ancestor in title to maintain certain building standards and uniformity in the improvements. See Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, L.R.A. 1916B, 1201, Ann.Cas.1916D, 1248; Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725; Rabouin v. Dutrey, 181 La. 725, 160 So. 393; and Ouachita Home Site & Realty Co. v. Collie, 189 La. 521, 179 So. 841. These cases further hold that restrictions of this sort are covenants running with the land; that they are inserted by the original vendor for the benefit of the contiguous landowners whose titles contain similar covenants and that injunction is the proper remedy by which violations of the covenants may be restrained.

Counsel for the defendant, while conceding (as they must) the force of the foregoing authorities, maintain that they are inapplicable to the facts of this case. They contend, in substance, that, for building restrictions of this sort to be enforced, it must clearly appear that the original plan of development was feasible—that is, that the lots sold under the plan are located in the same neighborhood and were contiguous to each other and further that the original vendor has actually carried out the general scheme by the insertion of reciprocal restrictive covenants in all the titles to the property sold under it. In addition, counsel declare that, even though the proof is sufficient to warrant the conclusion that the vendor inaugurated a general plan and inserted the covenants in the

titles of the purchasers in conformity therewith, relief will nevertheless be denied in equity where it appears that the character of the property subjected to the restrictions has changed to such an extent that the enforcement of the covenants could not maintain the purpose for which the original plan was designed.

We entertain little doubt as to the legal correctness of the contentions made by counsel for the defendant. However, we experience considerable difficulty in discerning that any of these propositions are sustained by the facts of this case. Let us see.

■ The first point raised by the defendant is that the New Orleans Housing Corporation was not justified in devising a general plan for the marketing of the lots owned by it, because those lots were scattered over a large territory and were not adjacent to each other. This contention might have some weight with respect to the few lots owned by the corporation in Squares Nos. 1306, 1307, 1229, 1230, 1152 and 1153. However, insofar as the lots comprising Square No. 1006 and those situated in Square No. 1007 facing on Desire Street are concerned, the proposition is not impressive. The lots in these squares are adjacent to each other and there was no good reason why the plan adopted by the Housing Corporation could not be fulfilled with respect to its property located in that vicinity. Accordingly, the restriction placed in the defendant's deed was one which inured to the benefit of all of the property (charged with like restrictions) fronting on either side of Desire Street between North Johnson and North Galvez Streets.

■ The second proposition advanced by the defendant is that the plan adopted by the Housing Corporation was abandoned by it and made impossible of attainment by the fact that the building restrictions were omitted from the deeds to Lots 4, 5, 6 and 8 in Square No. 1006 and two of the lots in Square No. 1007 fronting on Desire Street.

This contention must be rejected. The evidence exhibits that all of the property owners facing Desire Street in Squares Nos. 1006 and 1007 have complied with the building restrictions by erecting their buildings at a distance at least fifteen feet back of the property line. The fact that the titles to Lots Nos. 4, 5 and 6 in Square No. 1006 do not contain the set-back restrictions and that the owners of those lots cannot be forced to maintain their buildings in accordance with the restrictions cannot be successfully relied upon by the defendant as a ground for violating the covenant contained in his title. The conclusion might be different if it appeared that the owners of those lots were disregarding the restrictions for, in such case, the defendant could plausibly argue that the plan devised by the original vendor was not susceptible of fulfillment. But that is not the case before us.

■ The next contention of the defendant is that the restriction should not be enforced because the character of the real estate on Desire Street has been changed to such an extent that the plan of the original vendor is incapable of being main-

tained. This point is premised on the fact that, since the sale of the lots in the vicinity in question, the City of New Orleans has, by ordinance, changed the section in which the property is located from a residential to a commercial neighborhood.

 The proposition is without substance. In the first place, the original plan of the New Orleans Housing Corporation did not contemplate that the buildings erected on the lots would be used for residential purposes exclusively. On the contrary, the restrictions inserted in the titles merely require that the houses or other edifices be set back at least fifteen feet from the front property line. Moreover, even if it were shown to be otherwise, the adoption by the City of New Orleans of an ordinance unzoning the particular section to commercial uses would not have the effect of nullifying the general plan devised by the original vendor. See 26 Corpus Juris Secundum, Deeds, § 171, p. 577, and cases there cited.

Finally, we notice that the defendant complains that two of the plaintiffs, Brunig and Croall, are without a right to maintain the present suit because the building restrictions were omitted from their original titles. This point is of no importance whatever as it is clear that the dismissal of the suit as to these plaintiffs would not affect the right of the other five plaintiffs to obtain the redress granted by the trial Judge.

When the case was tried below, the parties agreed that it should be considered on its merits and that, if it was found that the plaintiffs were entitled to relief, a per-

manent injunction should be granted. The decree ordering a permanent injunction was entered in accordance with this stipulation.

For the reasons assigned, the judgment appealed from is affirmed.